J-S02035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| VALENTINO GAGLIARDI, | |
| Appellee | No. 966 EDA 2014 |

Appeal from the Order of February 21, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002666-2013

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROMEO PHILLIP GAGLIARDI, | |
| Appellee | No. 981 EDA 2014 |

Appeal from the Order of February 21, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014776-2012

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROMEO GAGLIARDI, | |
| Appellee | No. 1004 EDA 2014 |

Appeal from the Order of February 21, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002665-2013

J-S02035-15

BEFORE:  MUNDY, OLSON and WECHT, JJ.

MEMORANDUM BY OLSON, J.:                FILED OCTOBER 05, 2015

The Commonwealth of Pennsylvania appeals as of right from the trial court's February 21, 2014 orders, granting the motions to suppress that were filed by Romeo Phillip Gagliardi, Romeo J. Gagliardi, and Valentino Gagliardi (hereinafter, collectively, "the Gagliardis").  We vacate the trial court's orders and remand.

On August 24, 2012, the Commonwealth applied for a warrant to search the residence of 2627 Emily Street, in Philadelphia.  Attached to the application was an affidavit that was sworn by Philadelphia Police Officer Bruce Cleaver.  At the time Officer Cleaver swore the affidavit, Officer Cleaver was a 14-year police veteran and was assigned to the Narcotics Bureau.  As Officer Cleaver declared in the affidavit, during his time as a police officer, he was "involved in hundreds of narcotics arrests" and received specialized narcotics-related training given by the Philadelphia Police Department.  Search Warrant and Affidavit, 8/24/12, at 2.

As Officer Cleaver averred, the confidential informant ("CI") in this case provided him with the following tip: "a [white male] in his 30's who goes by the name Romeo lives at 2627 Emily [Street] and sells cocaine in South Philadelphia."[1]  Using the CI, Officer Cleaver then conducted two

---

[1] The search warrant stated that the "name of owner, occupant or possessor of" 2627 Emily Street was "Fracis Angelo."  Search Warrant and Affidavit, 8/24/12, at 1.

- 2 -

controlled purchases of narcotics from Romeo. The first controlled purchased occurred on August 23, 2012 and transpired in the following manner: the officers gave the CI $100.00 in marked currency and watched the CI contact Romeo to set up a drug transaction; the CI went to 26th and Dudley Street and waited for Romeo under a tree; Romeo exited 2627 Emily Street and walked up to the CI; the CI gave Romeo $100.00 and Romeo gave the CI a clear packet containing cocaine; and, the two parted ways. *Id.*

Following the transaction, the police observed Romeo engage in a second transaction, where Romeo was again the seller. According to the affidavit, after the CI and Romeo parted, Romeo spoke on a cell phone and "walked back to the tree where he met the [CI]." A white Honda parked under the tree, Romeo entered the passenger-side of the vehicle, the driver handed Romeo money, and Romeo handed the driver a clear packet. Following the transaction, Romeo "exited the Honda[,] walked back to 2627 Emily [Street,] and entered the front door." *Id.*

The next day, Officer Cleaver used the CI to conduct a second controlled purchase of narcotics from Romeo. With respect to this second controlled purchase: the officers gave the CI $100.00 in marked currency; the CI contacted Romeo; the CI went to 26th and Dudley Street; Romeo exited 2627 Emily Street and walked up to the CI; the CI gave Romeo

$100.00 and Romeo gave the CI a clear packet containing cocaine; and, Romeo "walk[ed] back into 2627 Emily [Street]." *Id.*

The affidavit concluded by stating that the CI was reliable because the CI had, in the past, "made buys which led to numerous confiscations of narcotics, [United States currency] and paraphernalia." *Id.*

Officer Cleaver swore to the above facts on August 24, 2012 – which was the same day as the second controlled purchase. Also on August 24, 2012, the issuing authority approved the search warrant for 2627 Emily Street and the police executed the search warrant for the residence. As the Commonwealth notes:

> Inside the residence, the police found two pounds of high grade marijuana, 136 grams of cocaine, $9,682[.00] in cash, a digital scale, a razor blade, a PGW bill in the name of Valentino Gagliardi, and a 9 millimeter Sig Sauer handgun loaded with [11] live rounds. Romeo Phillip Gagliardi [] – the Romeo who was observed selling cocaine to the informant – was arrested. Also present when the warrant was executed were his son Romeo J. Gagliardi [] and Valentino Gagliardi. They were likewise taken into custody.

Commonwealth's Brief at 6.

On February 21, 2014, the Gagliardis made joint, oral motions to suppress the evidence in their cases. The Gagliardis argued that the search warrant for 2627 Emily Street was not supported by probable cause, as the affidavit of probable cause did not describe the basis of the CI's knowledge and did not establish a nexus between the contraband and the house. N.T. Motion, 2/21/14, at 5.

On February 21, 2014, the trial court granted the Gagliardis' motions and suppressed the evidence seized from 2627 Emily Street. *Id.* at 14. Within the trial court's later-filed opinion, the trial court declared that the search warrant was defective because there were "insufficient facts contained in the affidavit of probable cause that could allow anyone to draw the legally correct deduction that there was a strong probability that illegal activities were being conducted from the premises searched[] or that any evidence of that illegal activity would be found there at the time of the search." Trial Court Opinion, 6/18/14, at 16.

First, the trial court declared, the affidavit was insufficient because it failed to establish that the tip was reliable. *Id.* at 7. With respect to this issue, the trial court declared that the affidavit: "did not say how or when the [CI] became aware that Romeo lived at 2627 [Emily Street] and was selling drugs;" did not specify when the CI informed the police of Romeo's address or that Romeo was selling drugs; did not describe how the CI contacted Romeo to arrange the buys; and, stated only that the CI previously "made buys" for the police, which "assisted in some unspecified number of previous confiscations." *Id.* Since the trial court concluded that the tip was unreliable, the trial court held that the affidavit failed to "indicat[e] that Romeo did, in fact, live or have some other possessory interest in" 2627 Emily Street. *Id.* at 7-8. According to the trial court, "[f]or all one can glean from [the affidavit] . . . [Romeo] could simply have

been visiting someone [at 2627 Emily Street] and made the [] sales with whatever drugs he happened to have on his person while he just happened to be at that particular location." *Id.* at 6-7.

Second, the trial court concluded that the affidavit did not establish a nexus between 2627 Emily Street and the contraband. *Id.* at 6. According to the trial court, this was because: none of the transactions occurred inside of the house; "the [CI] did not say that Romeo was selling drugs from, or storing them at, 2627 Emily [Street];" "[a]side from the fact that [Romeo] was seen leaving and reentering the house before and after making drugs sales, there is no indication whatsoever that he was, in fact, connected to the premises in any legally controlling capacity;" and, following the first controlled transaction between the CI and Romeo, Romeo conducted a second transaction without returning to the house, "thus indicating that Romeo did not have to return to the premises to replenish his stock and could very possibly have only been selling whatever drugs he happened to have on his person at any given time." *Id.* at 6-7.

The Commonwealth filed timely notices of appeal from the trial court's interlocutory suppression orders and, within each notice of appeal, the Commonwealth certified that the relevant suppression order terminated or

substantially handicapped the prosecution. *See* Pa.R.A.P. 311(d).[2] Now before this Court, the Commonwealth raises the following claim:

> Did the [trial] court err by invalidating a search warrant for a house on the ground that the police supposedly lacked probable cause despite arranging controlled buys in which a defendant was observed leaving the house, selling cocaine, and then returning to the house on two days in succession?

Commonwealth's Brief at 3.

After viewing the evidence in a common-sense, non-technical manner, we conclude that substantial evidence in the record supports the issuing authority's decision to issue a warrant – and that the trial court thus erred when it granted the Gagliardis' motions to suppress.

To begin, we conclude that the trial court's faulty suppression ruling was occasioned by the fact that the trial court applied an incorrect standard of review to the issuing authority's probable cause determination.

According to our Supreme Court, when deciding whether to issue a search warrant, "the task of the issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***Commonwealth v. Gray***, 503 A.2d 921, 925 (Pa. 1986),

---

[2] On October 3, 2014, we granted the Commonwealth's petition to consolidate the appeals involving the individual Gagliardis. Order, 10/3/14, at 1.

*quoting* **Illinois v. Gates**, 462 U.S. 213, 238 (1983). However, as our Supreme Court held, with respect to a court that is reviewing an issuing authority's probable cause determination:

> [the] reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue a warrant. . . . In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

**Commonwealth v. Jones**, 988 A.2d 649, 655 (Pa. 2010) (internal citations, quotations, and corrections omitted).[3]

---

[3] As we have stated, with respect to an appeal from a suppression court ruling:

> Our review is limited to determining whether the record supports the findings of fact of the suppression court and whether the legal conclusions drawn from those findings are correct. We are bound by the factual findings of the suppression court, which are supported by the record, but we are not bound by the suppression court's legal rulings, which we review *de novo.*

**Commonwealth v. James**, 69 A.3d 180, 186 (Pa. 2013) (internal quotations, citations, and corrections omitted).

In the case at bar, the suppression court made no factual findings. Rather, it was tasked with making the **legal determination** as to whether – when looking at the four corners of the affidavit – "a substantial basis exists to support the magistrate's probable cause finding." Since "we are not bound by the suppression court's legal rulings," our standard of review of the suppression court's ruling is *de novo*. **Id.** Thus, as was true with the suppression court, we are required to "determine whether or not there is substantial evidence in the record supporting the [issuing authority's] decision to issue a warrant." **Jones**, 988 A.2d at 655.

Thus, although "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," the deference afforded a magistrate judge ensures that, "[i]f a substantial basis exists to support the magistrate's probable cause finding, [the trial court] must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant." *United States v. Leon*, 468 U.S. 897, 914 (1984); *United States v. Miknevich*, 638 F.3d 178, 182 (3rd Cir. 2011) (internal citations and quotations omitted).

In this case, the trial court's stated reasoning reveals that it failed to afford deference to the issuing authority's probable cause determination and that it might have even held the Commonwealth to a higher burden than "probable cause."

During the pre-trial motion hearing, the trial court declared: "the question for the [trial c]ourt is whether there is a fair possibility that contraband or evidence of a crime will be found in the particular place." N.T. Motion, 2/21/14, at 13. Utilizing this standard, the trial court then suppressed the evidence that was seized from 2627 Emily Street. *Id.* at 14. However, under our Supreme Court's precedent, the trial court's statement of the question before it was incorrect. Certainly, as phrased, the trial court's statement suggests that it believed it was required to conduct a *de novo* review of the issuing authority's probable cause determination. As our Supreme Court held, however, the issue before the trial court was not "a *de*

*novo* review of the issuing authority's probable cause determination, but [was] simply . . . whether or not there is **substantial evidence** in the record supporting the decision to issue a warrant." *Jones*, 988 A.2d at 655 (emphasis added).

Further, within the trial court's opinion, the trial court apparently holds the Commonwealth to a higher burden than probable cause. Indeed, at various times in the trial court's opinion, the trial court declares that the affidavit of probable cause was required to establish: "that a specific criminal act is **very probably** being conducted at a specific location;" "that there was a **strong probability** that illegal activities were being conducted from the premises searched;" and, "that there was a **preponderant probability** that the items to be seized or 'Romeo' would be at the residence searched." *See* Trial Court Opinion, 6/18/14, at 6 and 16 (emphasis added). Again, the issue before the trial court was "simply to determine whether or not there is substantial evidence in the record supporting the decision to issue a warrant." *Jones*, 988 A.2d at 655. However, even if the trial court were conducting a *de novo* review of the search warrant, probable cause merely required that the affidavit establish "a **fair probability** that contraband or evidence of a crime will be found in a particular place." *Gray*, 503 A.2d at 925 (emphasis added).

We conclude that, when the issuing authority's probable cause determination is reviewed under the proper standard, it is apparent that

substantial evidence in the record supports the issuing authority's decision to issue a warrant.

First, the trial court erred in concluding that the affidavit fails to establish that the CI's tip was reliable. Our Supreme Court explained:

> a determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner. Thus, an informant's tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity. The corroboration by police of significant details disclosed by the informant in the affidavit of probable cause meets the ***Gates*** threshold. ***Commonwealth v. Sanchez***, 907 A.2d 477, 488 (Pa. 2006), *quoting* ***United States v. Tuttle***, 200 F.3d 892, 894 (6th Cir. 2000) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause where there is some independent corroboration by police of the informant's information."). . . The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.

***Commonwealth v. Clark***, 28 A.3d 1284, 1288 (Pa. 2011) (emphasis omitted) (some internal quotations and citations omitted).

Here, the trial court concluded that this tip was unreliable because the affidavit failed to disclose the basis of the CI's knowledge and because the affidavit merely declared that the CI had, in the past, "made buys which led to numerous confiscations of narcotics, [United States currency] and

paraphernalia." Trial Court Opinion, 6/18/14, at 7. We agree that the affidavit fails to state the basis of the CI's knowledge and does not establish the reliability of the CI, himself. *See* Wayne R. LaFave, 2 SEARCH & SEIZURE § 3.3(b) (5[th] ed.) ("[t]he mere fact that the informant was given money and sent to a particular place to meet a suspect and then returned with narcotics, all under the close surveillance of police, alone indicates very little about the informer's credibility in the role of a reporter of facts when he is not under such close supervision. However, it would be a different matter if the informant had initiated this prior activity, as where he advises the officer that he can make a buy from a certain individual and then does so"). Yet, in arriving at its final conclusion that the tip was unreliable, the trial court discounted the fact that the police independently corroborated significant portions of the CI's tip, by utilizing the CI to conduct two controlled purchases of cocaine from "Romeo" on two consecutive days. Thus, we conclude that the trial court erred when it declared that the CI's tip was unreliable.

The CI's tip in this case consisted of the following five parts: "[1)] a [white male; 2)] in his 30's[; 3)] who goes by the name Romeo[; 4)] lives at 2627 Emily [Street; and, 5)] sells cocaine in South Philadelphia." Search Warrant and Affidavit, 8/24/12, at 2. Looking to the four corners of the affidavit, the police independently corroborated almost the entirety of the tip, since – on two consecutive days – the police conducted two controlled

purchases of cocaine, whereby the police witnessed: a white male, who was "identified by the [CI] as the male he knew as Romeo," exit 2627 Emily Street, walk up to the CI, sell the CI cocaine, and then walk back into 2627 Emily Street. *Id.* This independent police corroboration of significant aspects of the tip provided the issuing authority with a substantial basis for concluding that the entirety of the tip was reliable. *See Gates*, 462 U.S. at 244 (holding that if "an informant is right about some things, he is more probably right about other facts"); *Clark*, 28 A.3d at 1288 ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause where there is some independent corroboration by police of the informant's information").

Indeed, in concluding that the affidavit failed to "indicat[e] that Romeo did, in fact, live or have some other possessory interest in" 2627 Emily Street, the trial court not only failed to give deference to the issuing authority's probable cause determination, but the trial court also failed to view the totality of the circumstances in a practical, common-sense manner. Like the trial court said, it is, of course, **possible** that "Romeo" **might have** "simply [] been visiting someone [at 2627 Emily Street] and made the [] sales with whatever drugs he happened to have on his person while he just happened to be at that particular location." Trial Court Opinion, 6/18/14, at 6-7. However, given that the CI told the police that Romeo "lives at 2627 Emily [Street]," that the police independently corroborated other, significant

- 13 -

aspects of the CI's tip, and that – on two consecutive days – the police watched as Romeo exited 2627 Emily Street, completed the controlled purchase, and then returned to 2627 Emily Street, we conclude that – viewing the totality of the circumstances in a practical, common-sense manner – the issuing authority had substantial evidence to believe that, at the time the search warrant was authorized, "Romeo" lived at 2627 Emily Street and sold cocaine in South Philadelphia. The trial court's conclusion to the contrary was erroneous.

The trial court also concluded that the affidavit of probable cause did not establish a nexus between the Gagliardis' house and the sale or storage of contraband. Trial Court Opinion, 6/18/14, at 6-7. However, viewing the totality of the circumstances in a practical, common-sense manner, we conclude that substantial evidence in the record supports the issuing authority's conclusion that there was a "fair probability" that contraband would be discovered in 2627 Emily Street.

As explained above, the issuing authority had a substantial basis to conclude that "Romeo" lived at 2627 Emily Street and sold cocaine in South Philadelphia. Further, the affidavit declares that, on two consecutive days, the police witnessed the CI contact Romeo and, in response, Romeo exited 2627 Emily Street, walked up to the CI, sold the CI cocaine, and then returned to 2627 Emily Street. Viewing these facts in a practical, common-sense manner, we conclude that these facts constitute significant evidence

that Romeo was using his home at 2627 Emily Street as the **base** of illicit operations. Indeed, with respect to both sales, Romeo left from his house, went directly to the meeting point, sold the CI cocaine, and then either made an additional sale and walked back to his house or simply walked back to his house. Based on these facts, we conclude that the issuing authority had a substantial basis for determining that Romeo stored his cocaine inside of his 2627 Emily Street base and that, when he returned to his base, he placed the contraband buy-money inside of 2627 Emily Street. Therefore, the issuing authority possessed a substantial basis for determining that there was a fair probability that contraband (either cocaine or buy-money) would be found at 2627 Emily Street.[4]

---

[4] Within the trial court's opinion, the trial court makes much of the fact that, following the first controlled transaction between the CI and Romeo, Romeo conducted a second transaction (where he was again the seller) without returning to the house. According to the trial court, this "indicat[es] that Romeo did not have to return to the premises to replenish his stock and could very possibly have only been selling whatever drugs he happened to have on his person at any given time." Trial Court Opinion, 6/18/14, at 6-7. We reject the trial court's *de novo* re-interpretation of the facts. Indeed, the fact that Romeo did not need to return to 2627 Emily Street to replenish his cocaine – so that he could conduct **a single additional transaction** – might simply mean that Romeo did not know how much cocaine the CI wished to purchase and that, following the transaction, Romeo had enough cocaine on hand to conduct an additional transaction. Regardless, it is not the role of either this Court or the trial court to conduct a *de novo* review of the issuing authority's probable cause determination. We are simply to determine "whether or not there is substantial evidence in the record supporting the decision to issue a warrant." **Jones**, 988 A.2d at 655. Here, the fact that Romeo was able to conduct two separate sales without returning to 2627 Emily Street does not lessen the probability that Romeo's base of operations was 2627 Emily Street or that contraband would be found at 2627 Emily Street.

In arriving at our conclusion, we recognize our opinions in **Commonwealth v. Kline**, 335 A.2d 361 (Pa. Super. 1975) (*en banc*) and **Commonwealth v. Way**, 492 A.2d 1151 (Pa. Super. 1985). However, neither opinion controls the resolution in the case at bar. Certainly, in **Kline**, this Court held that the affidavit of probable cause failed to establish a nexus between the drug dealer's apartment and the contraband because the affidavit omitted certain facts concerning the single, private transaction between the drug dealer and two girls. We held that these omitted facts included: "where the transaction [between the dealer and the two girls] took place, how long it took, how long [the dealer] was gone, [and] what led the girls to conclude that he had gone to his apartment [to retrieve the drugs]." **Kline**, 335 A.2d at 364. In the case at bar, however, we are dealing with two controlled transactions – that were witnessed by the police and recounted, in detail, in the affidavit of probable cause. Further, the affidavit in the case at bar clearly recites "where the [controlled] transaction[s] took place" and "what led [the police] to conclude" that Romeo left his home prior to the drug sales and then returned to his home after the drug sales. **See id.** **Kline** is thus inapposite to the facts of this case.

Moreover, **Way** is of even less persuasive value than **Kline**. In **Way**, the affidavit of probable cause merely declared that: the defendant was a drug dealer; an "alleged [drug] transaction occurred in [the defendant's]

blue van along a country road[; and, a]fter the alleged [drug] transaction, police followed the blue van to a driveway of a property" that was owned by the defendant. *Way*, 492 A.2d at 344-347. Confronted with this affidavit, the *Way* Court held that there were "[insufficient] facts to believe that drugs would be found" in the defendant's house and that the search warrant for the defendant's house was thus defective. *Id.* at 347.

*Way* is inapplicable to the case at bar. Indeed, in *Way*, the totality of the circumstances demonstrated that the defendant's base of operations for his drug dealing was his blue van – while in the case at bar, the facts establish that the Romeo's base of operations for his drug dealing was his house at 2627 Emily Street.

We thus conclude that the issuing authority possessed a substantial basis for determining that there was a fair probability that contraband would be found at 2627 Emily Street. We vacate the trial court's orders in these cases and remand.

Orders vacated. Cases remanded. Jurisdiction relinquished.

Judge Mundy joins this memorandum.

Judge Wecht files a Dissenting Memorandum.

J-S02035-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2015

- 18 -