J-S96005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| TROY DEVON MARTIN | No. 1855 WDA 2015 |

Appeal from the Order Entered November 3, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012366-2013

BEFORE:  BENDER, P.J.E., BOWES, J., and SOLANO, J.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 31, 2017**

The Commonwealth appeals from the order granting Troy Devon Martin's motion to suppress.  We reverse and remand.

This matter arose after Pittsburgh City police officers received information that illegal narcotics were being sold from a particular location on Mercer Street in Pittsburgh, Allegheny County.  After conducting an investigation, the police sought and obtained a search warrant for the residence in question.  The affidavit of probable cause in support of the search warrant, attested to by Officers Michael Lafferty and Michael Slatcoff, indicated the following:

> Within the past several weeks, Officers received information from a confidential source [("CI")], who stated that large amounts of heroin are being stored inside the residence of 714 Mercer Street Pittsburgh, PA 15219 [("714 Mercer Street")].

The [CI] stated that the males operating this drug organization out of 714 Mercer Street are only known to him/her as "Ryder" and "Troy". The [CI] stated that they drive around in a newer rental van model Chrysler Mini Van, and the van has dark tinted windows. The [CI] stated that "Ryder" always sits in the back of the mini van to avoid being seen by police. The [CI] stated that "Ryder" occasionally has other people drive the van and make deliveries also, during which time the narcotics are transported in the male[']s groin areas to avoid detection. The [CI] described 714 Mercer Street as a nice red brick house, with a large rear deck. The [CI] stated that this house was the first house on your left when turning off Bedford Avenue, onto Mercer Street. The [CI] stated that older relatives of "Troy" own the house and allow the young males to use the house to hide their narcotics.

The [CI] stated that "Ryder" and "Troy" also use the house at 714 Mercer Street to smoke marijuana, party, and have sex with woman [sic]. The [CI] stated that "Ryder" is a black male with tattoo's on his face and all over his body.

Officers know the nick name "Ryder" as a male named Chauncey Howard . . . who frequents the Hill District area. Officers showed the [CI] a picture of Howard and he/she positively identified Howard as the male he/she knows as "Ryder".

Officers searched 714 Mercer Street on the Allegheny County Assessment website. Officers found that the residence is owned by Albert Martin[.] Officer Slatcoff then recalled an arrest made by Lt Lando where a Troy Martin was arrested for possession of a small amount of marijuana. Officer Slatcoff then researched Lt Lando's arrests in the Quick Arrest System where he found a Troy Martin . . . was arrested by Lt. Lando on 05/06/2013 CCR # 13-86792, in the Oak Hill area of the City of Pittsburgh. The arrest paperwork showed that Troy Martin used the address 714 Mercer Street as the place he receives mail. Officer Slatcoff contacted Lt. Lando via phone and confirmed that he arrested a Troy Martin who used the address 714 Mercer Street, as reflected in the arrest paperwork. Officer Slatcoff showed the CI a picture of Troy Martin, who he/she positively identified as the male he/she knows as "Troy".

A JNet search of Chauncey Howard['s] . . . criminal history was conducted. Howard was charged with 13a30 Possession with intent to deliver charge on 04/08/2010. Martin was also recently charged for 13a31 Possession of small amount of marijuana.

With[in] the past several weeks, Officer Slatcoff was leaving court, heading back to Zone 2 Station. While on Bedford Avenue, Officer Slatcoff observed a new, black, Chrysler Town and Country van parking directly in front of 714 Mercer Street. Officer Slatcoff passed the vehicle and he observed an unknown, young black male exiting the driver seat. Officer Slatcoff was able to obtain the registration plate of the vehicle and it is HZR-7279. Officer Slatcoff ran the vehicles registration through index and it came back to the rental company Ean Holdings LLC. Officers found that this van was consistent with the information received from the [CI].

Within the past several weeks, Officers formulated plans to conduct surveillance on 714 Mercer Street. Officers were located in a fixed position, with a clear unobstructed view of 714 Mercer Street. Within an hour of beginning surveillance of the house, I observed a new, black Chrysler Town and Country van pull up directly outside of 714 Mercer Street. I observed an unknown, young black male driving the vehicle. I observed Troy Martin exit the front passenger seat of the vehicle, and enter 714 Mercer Street. Several minutes later, I observed Martin quickly exit 714 Mercer Street and enter the van. The van then drove away from the residence. The van that came to 714 Mercer Street was the same black Chrysler van that Officer Slatcoff observed on a previous date, with the same registration information (HZR-7279). The information received from the [CI] corroborated with what Officers observed while conducting surveillance of the residence.

On 06/11/2013 at approximately 0300 hours, I Officer Lafferty, formulated plans to conduct a trash pull of the residence of 714 Mercer Street.

At approximately 0310 hours, I drove by the above location at which time I observed (2) large black trash bags with yellow handles, laying curbside, on Bedford Avenue, directly on the side of 714 Mercer Street. The bags were placed right

outside the back gate of 714 Mercer Street. I parked a short distance from his location and retrieved these bags. I then returned to Zone 2 Station to sort through the contents of the bags.

While at Zone 2 Station, I opened the first black garbage bag, with yellow handles, and began sorting through the contents of the bag. I recovered 1 baggie diaper (a sandwich bag with the corners torn off to resemble a diaper), 1 baggie corner, 1 piece of indicia for Albert Martin at 714 Mercer Street, and several small pieces of suspected marijuana strewn throughout the bag. I tested the suspected marijuana with a Scotts Field Test Kit and it came back positive for marijuana.

I then opened the second black garbage bag, with yellow handles, and began sorting through the contents of the bag. I recovered 3 empty prescription bottles for an Albert Martin.

I know from my training and experience that package narcotics are commonly stored in sandwich bag corners. I also know that drug dealers and users commonly rip the corners off of sandwich bags, making the bag resemble a diaper, to store illegal narcotics. The items found in the garbage bags I retrieved from 714 Mercer Street are consistent with packaging and storing illegal narcotics.

While searching through the garbage, I also recovered small pieces of marijuana, which tested positive. Finding the marijuana in the garbage is consistent with information that the [CI] provided. The [CI] stated that 714 Mercer Street is not only used by Troy Martin and Chauncey Howard to store heroin, but they also use the residence to smoke marijuana and party.

Due to the totality of the circumstances, the information provided by the [CI], Officers surveillance of the residence corroborating the [CI's] information, and the trash pull reveilling [sic] illegal narcotics and drug parapherlilia [sic], I believe that the occupants of 714 Mercer Street are selling heroin and using marijuana in this address.

Affidavit of Probable Cause, 6/12/13, at 1-4. Additionally, both officers

attested that, through their training and experience, they were familiar with

the consistency, packaging, and methods of transaction employed in the sale and distribution of marijuana and heroin.

On June 6, 2013, the magistrate issued a search warrant for 714 Mercer Street, and a Pittsburgh Police SWAT unit executed it that same day. Appellee and Albert Martin were present at the time of the search, and police recovered numerous indicia that both men resided at the house. The search also yielded a total of twenty-three bricks and four bundles of heroin, two bags and two knotted-bags of cocaine, cocaine cutting agents, a digital scale, narcotic packaging material, $4,220 U.S. currency, two firearms, and an Apple iPhone. After being read his **Miranda** rights,[1] Appellee made incriminating statements to police.

Based on the foregoing, Appellee was charged with one count of possession with intent to deliver, two counts of person not to possess a firearm, one count of possession of a controlled substance, and one count of possession of drug paraphernalia. Appellee filed a pre-trial motion to suppress. The court ordered the parties to file briefs on the matter wherein Appellee contended that the items seized by police and his subsequent statements should be suppressed since the affidavit of probable cause in support of the search warrant failed to provide a sufficient basis to find probable cause. The trial court agreed with Appellee's assessment, and

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

suppressed both the items seized from 714 Mercer Street, and Appellee's incriminating statements to police. The Commonwealth filed a timely notice of appeal and complied with the court's directive to file a Rule 1925(b) statement of matters complained of on appeal. The court authored its Rule 1925(a) opinion.

The Commonwealth presents one issue for our review: "Whether the trial court erred in ruling that the information contained within the affidavit of probable cause was not sufficient to support the issuance of the search warrant for the at-issue premises?" Commonwealth's brief at 4.

We review the grant of a suppression motion under well-established principles. We consider the evidence of the defendant, as the prevailing party below, and any evidence of the prosecution that is uncontradicted in the context of the suppression record. ***Commonwealth v. Carter***, 105 A.3d 765, 768 (Pa.Super. 2014). We are bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. ***Id***. We are not bound by the legal conclusions of the suppression court. ***Id***.

The trial court found that the affidavit failed to establish probable cause for a variety of reasons. It reviewed the affidavit and concluded that it did not include any information concerning the reliability of the CI, or the basis for the CI's assertion that "large amounts of heroin [were] being stored inside the residence at 714 Mercer Street." Trial Court Opinion, 6/20/16, at

10. The court largely discredited the information provided by the CI since it could be supplied by "any casual observer," and it did not implicate drug activity. *Id*.

Insofar as the police attempted to corroborate the CI's statements, the court found that such "confirmation [added] nothing to aid in the determination that the residence [was] being used to store large amounts of heroin." *Id*. Similarly, the court observed that Appellee's past criminal history did not provide a connection to drug activity at 714 Mercer Street. Finally, the court discounted the retrieval of marijuana and drug paraphernalia from Appellee's garbage, opining that those items do not support probable cause that there was "large amounts of heroin, or any heroin" within the house. *Id*. at 11. Thus, the court maintained that the totality of the circumstances did not establish probable cause to search the residence located at 714 Mercer Street.

Preliminarily, we observe that the suppression court's legal conclusions were drawn from an erroneous standard of review. Our Court previously reiterated the Supreme Court's exposition on the matter in *Commonwealth v. Gagliardi*, 128 A.3d 790 (Pa.Super. 2015). In *Gagliardi*, we stated, "[a]ccording to our Supreme Court, when deciding whether to issue a search warrant, 'the task of the issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of

persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" ***Id***. at 794, *quoting* ***Illinois v. Gates***, 462 U.S. 213, 238 (1983). As it pertains to a court reviewing an issuing authority's probable cause determination:

> [the] reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue a warrant[.] In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

***Id***. Notwithstanding that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," this deference ensures that, "[i]f a substantial basis exists to support the magistrate's probable cause finding, [the trial court] must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant." ***Id***. 794-795, *citing* ***United States v. Leon***, 468 U.S. 897, 914 (1984).

Instantly, the trial court's resolution of the motion to suppress suggests that it did not accord the magistrate's decision deference, but rather, engaged in its own *de novo* review of the evidence proffered within the four corners of the affidavit of probable cause. The affidavit established that a CI provided information regarding the occupants of 714 Mercer Street, their alleged means of distributing narcotics, and that narcotics were stored

at that location. The police investigated the matter and were able to verify many of the details supplied by the CI.

Beyond applying an inappropriate standard of review, the trial court compounded this error by requiring the police to corroborate that a "large amount of heroin" was stored at the house in order to find the CI's information sufficiently reliable to support probable cause. We have long held that "the law does not require that the information in a warrant affidavit establish with absolute certainty that the object of the search will be found at the stated location[.]" **Commonwealth v. Davis**, 595 A.2d 1216 1222 (Pa.Super. 1991); **Commonwealth v. Forster**, 385 A.2d 416, 437-438 (Pa.Super. 1978).

Based on the relevant case law, the officers herein were not required to substantiate that "large amounts of heroin" were onsite at 714 Mercer Street in order to find the CI otherwise reliable. Undeniably, much of the information provided by the CI could have been obtained by a casual passerby. Nevertheless, the CI averred that Appellee's older relative owned the house, and that the criminal organization employed a rented van to distribute the narcotics. A casual observer could not have discerned this information. Yet this information was confirmed when police investigated further. Indeed, the police's investigative activities verified the vast majority of the information provided by the CI, and disproved none of it.

Moreover, and more importantly, the police investigation actually uncovered evidence of a crime being committed at 714 Mercer Street when it recovered marijuana, a Schedule I controlled substance, during the trash pull. Contrary to the trial court's evaluation, this alone demonstrates the CI's reliability and establishes a fair probability that a crime was being committed at 714 Mercer Street since the CI supplied information of this precise crime occurring within the confines of the house.

Also contained within Appellee's trash were sandwich bags manipulated in a manner that Officer Lafferty, based on his training and experience, recognized as facilitating the distribution of heroin. Common sense dictates that the presence of marijuana and drug paraphernalia indicates that behavior of a criminal nature was occurring at 714 Mercer Street. Although the items recovered from the trash may not confirm with absolute certainty that "large" amounts of heroin or marijuana were being stored at that location, they created a **fair probability** that evidence of a crime would be discovered upon a search of the residence.

Hence, when viewing the affidavit from a common-sense, non-technical perspective, the magistrate had substantial evidence to issue a search warrant, and the suppression court erred in granting Appellee's motion to suppress. We vacate the trial court's order and remand.

Order vacated. Case remanded. Jurisdiction relinquished.

Judge Solano joins the Memorandum

President Judge Emeritus Bender files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/31/2017