J-S02012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OMARK RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 1859 EDA 2017 |

Appeal from the Judgment of Sentence May 15, 2017
In the Court of Common Pleas of Lehigh County Criminal Division at No(s):
CP-39-CR-0001885-2016

BEFORE:  BOWES, J., NICHOLS, J., and RANSOM, J.*

MEMORANDUM BY BOWES, J.:                                    **FILED MAY 14, 2018**

Omark Rodriguez appeals from the judgment of sentence of five to ten years imprisonment imposed following his conviction of drug-related offenses.  We affirm.

The trial court, sitting as the finder of fact, made the following findings:

> Agents from the Office of the Attorney General were conducting a narcotics investigation utilizing a first-time, but known, confidential informant (CI).  In January 2016, the CI provided the agents with information that [Appellant] was selling large amounts of cocaine from his home at 208 N. Nelson Street, Apartment 3, Allentown, Pennsylvania.  The CI also advised that [Appellant] was selling the cocaine for $44.00 per gram.  Agent Thomas Sedor drove the CI to the [N.] Nelson Street address, where the CI pointed out 208 N. Nelson [Street] as [Appellant's] residence, and pointed out [Appellant's] vehicle, a silver Hyundai SUV.  From the license plate number, [Agent] Sedor secured a copy of [Appellant's] driver's license photo, and the CI positively identified [Appellant] as the person selling cocaine.

_____
*  Retired Senior Judge Assigned to the Superior Court.

On April 4, 2016, agents again met with the CI and arranged for a controlled buy of cocaine from [Appellant]. The CI provided agents with a [new cell phone] number for [Appellant] and, while in the presence of agents, the CI placed a call to the number and arranged to buy one ounce of cocaine for $1200.00. Agent Sedor searched the CI and his vehicle, and then provided the CI with $1200.00 in prerecorded U.S. currency. The CI drove to the [N.] Nelson Street address, and agents followed and set up surveillance. Agent Sedor observed the CI enter the [N.] Nelson Street address. While inside, the CI called Agent Sedor and advised him that they would be going to the supplier's residence to obtain a large amount of cocaine. Subsequently, the agents saw the CI and [Appellant] exit the building and enter the CI's vehicle. Agents followed the vehicle to 55 S. Madison Street in Allentown, and observed [Appellant] exit the vehicle, go up a flight of stairs, and enter the building. Approximately one minute later, [Appellant] exited the building, got back into the CI's vehicle, and the two drove back to the [N.] Nelson Street address. Once back at [N.] Nelson Street, agents observed the CI and [Appellant] go back inside the apartment. The CI again contacted Agent Sedor and advised him that [Appellant] obtained a large amount of cocaine and was repackaging it inside the apartment. A few minutes later, agents met back up with the CI[,] who provided them with an ounce of a substance that field-tested positive for cocaine.

[At Agent Sedor's directive, a]gents kept surveillance on the [N.] Nelson Street address, and at approximately 10:38 [p.m.], they observed [Appellant] and a young boy leave the residence, get into the silver Hyundai, and drive away. [The agents had been apprised by Agent Sedor of the details of the controlled drug buy which occurred earlier in the evening.] Agents followed [Appellant] to a gas station on Union Boulevard. [Appellant] went inside briefly, then pumped gas, and got back into his vehicle. At this time, agents approached and identified themselves both verbally and with their badges displayed. [Appellant] was detained and patted down for safety reasons. Agents found $7207.00 in cash in [Appellant's] front pants pocket. However, none of the prerecorded money was found. [Appellant] was transported to the Attorney General's Allentown office.

[Appellant] was advised he was the subject of a drug investigation. He was provided with his **Miranda**[1] rights and signed a waiver of those rights. [Appellant] also gave written consent to search his residence. [Appellant] admitted there was about 200 grams of cocaine in his residence. Agents searched the residence and discovered 282 grams of cocaine; a digital scale; inositol, a commonly used cutting agent; marijuana; and $1083.00 in U.S. [c]urrency, which included $1000.00 of the prerecorded money. [Appellant] subsequently gave a written statement to the agents.

Trial Court Opinion, 10/25/16, at 2-3 (footnote added).

Appellant was arrested and charged with various drug-related offenses. Appellant filed an omnibus pretrial motion, which included a motion to suppress the evidence recovered by police based on his claim that his warrantless arrest was illegal. The trial court conducted a suppression hearing, after which it denied the motion. Following a non-jury trial on March 2, 2017, the trial court found Appellant guilty of two counts each of possession with intent to deliver a controlled substance and possession of a controlled substance, and one count of possession of drug paraphernalia. On May 15, 2017, the trial court sentenced Appellant to an aggregate term of five to ten years imprisonment. Appellant filed a timely notice of appeal, and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a Pa.R.A.P. 1925(a) opinion,

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

incorporating by reference its October 25, 2016 opinion and order denying Appellant's motion to suppress.

Appellant raises the following claim for our review: "Did the suppression court commit reversible error in denying [Appellant's] motion to suppress evidence obtained as a result of his illegal warrantless arrest which was not supported by probable cause?" Appellant's brief at 6 (some capitalization omitted).

On appeal from the denial of a suppression motion,

> Our standard of review . . . is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa.Super. 2011) (*en banc*) (citation omitted). Additionally, "appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pretrial motion to suppress." *Commonwealth v. Bush*, 166 A.3d 1278, 1281-82 (Pa.Super. 2017) (citation omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Id.* at 1282 (citation omitted).

In evaluating Appellant's argument that he was unlawfully arrested, we take note that law enforcement authorities must have a warrant to arrest an individual in a public place unless they have probable cause to believe that (1) a felony has been committed; and (2) the person to be arrested is the felon. *See Commonwealth v. Martin*, 101 A.3d 706, 721 (Pa. 2014). As we have stated:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require *only a probability*, and not a prima facie showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (emphasis in original) (citations and quotation marks omitted).

A determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner. *Commonwealth v. Gagliardi*, 128 A.3d 790, 795 (Pa.Super. 2015). Information provided by a CI "may constitute probable cause where police independently corroborate the [information], or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." *Id*. at 795-96 (citation omitted).

Appellant contends that his statement and the evidence obtained by the agents should have been suppressed because, at the time of his arrest, the agents lacked probable cause to believe that he had committed a crime. Appellant claims that the agents were not authorized to act on the information provided by the CI because they had no independent evidence to corroborate it. According to Appellant, despite their observation of Appellants' movements, "[a]ll the agents knew at the time of the arrest was that the CI had returned . . . with an ounce of cocaine." Appellant's brief at 21. Appellant further claims that, although Agent Sedor indicated that he had been working with the CI and found him reliable, Agent Sedor failed to establish the basis for the CI's reliability. Appellant argues that because the agents had nothing more than a "suspicion" that he had committed an offense, they lacked probable cause to arrest him. Appellant further asserts that, although he was cooperative with the agents, his voluntary statement and consent to search his home were invalidated by the illegality of his arrest. On this basis, Appellant contends that his statement and evidence obtained by the agents constitute fruit of the poisonous tree, which should have been suppressed.

Here, the record reflects that Agent Sedor testified at the suppression hearing that he had been working with the CI for four months to collect intelligence information in the pending investigation of Appellant. N.T. Suppression, 7/26/16, at 32-33. In January 2016, the CI had pointed out

Appellant's residence and vehicle to Agent Sedor, which Agent Sedor investigated. *Id*. at 11-12. Agent Sedor obtained a driver's license photograph of Appellant, and the CI positively identified the person in the photograph as Appellant, who was selling cocaine out of his residence. *Id*. Agent Sedor testified that he found the CI to be reliable for reasons independent of the events of April 4, 2016. *Id*. at 33. Moreover, on April 4, 2016, the agents were able to substantiate additional information provided by the CI. On that date, the CI provided Agent Sedor with Appellant's new cell phone number, and Agent Sedor personally observed the CI make contact with Appellant via his phone to arrange the controlled cocaine purchase. *Id*. at 12-13. The CI and his vehicle were searched by the agents, before the CI was provided with $1200. *Id*. at 13. During execution of the controlled buy, the agents accompanied the CI to the Appellant's residence, and kept him under continuous surveillance. *Id*. at 13-14. The CI then contacted Agent Sedor to inform him that he would be driving Appellant to his supplier's residence to obtain a large amount of cocaine. *Id*. at 14. The agents observed the CI and Appellant leave Appellant's residence, enter the CI's vehicle, and drive to a residence on Madison Street. *Id*. Approximately one minute after Appellant entered the Madison Street residence, he returned to the CI's vehicle, and they drove back to Appellant's residence. *Id*. at 15. The CI then contacted Agent Sedor to inform him that Appellant had obtained a large amount of cocaine, and that

he was repackaging it. *Id*. at 16. A few minutes later, the CI left Appellant's residence and met with Agent Sedor, whereupon he provided the agent with an ounce of a substance which field-tested positive for cocaine. *Id*. at 16. During this entire time, the agents maintained surveillance on the CI and Appellant. *Id*. at 15. The CI and his vehicle were again searched by agents after the controlled buy. *Id*. at 17. The CI provided additional information that Appellant had just obtained an even larger amount of cocaine. *Id*. at 17.

Here, the record supports the suppression court's findings that Appellant's arrest was supported by probable cause that he was involved in the felonious sale of cocaine to the CI, and thus, we are bound by those findings. *See Galendez*, *supra*. The information from the CI, who had provided accurate information to Agent Sedor in the past, coupled with and substantiated by the agents' direct observation of the conduct of Appellant and the CI, was sufficient to warrant a person of reasonable caution to believe that Appellant **probably** delivered to the CI the cocaine that the CI gave to the agents. *See id.*; *see also Gagliardi*, *supra*. Thus, Appellant's warrantless arrest was lawful, and the contraband seized was admissible.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/18