J-S39025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSE J. RIVERA-HERNANDEZ | : | |
| | : | |
| Appellant | : | No. 672 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 27, 2023
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0000674-2022

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:     **FILED: DECEMBER 15, 2023**

Jose J. Rivera-Hernandez appeals from the judgment of sentence entered following his convictions for two counts each of possession with intent to deliver controlled substances ("PWID") and possession of a controlled substance and one count each of dealing in proceeds of unlawful activity, persons not to possess a firearm, receiving stolen property, and possession of drug paraphernalia.[1] Rivera-Hernandez argues the search warrant executed on his residence was not supported by the requisite probable cause to establish a substantial nexus between Rivera-Hernadez's criminal activity on the streets and any contraband within his home. We affirm.

In March 2022, the police executed a search warrant on Rivera-Hernandez's home. He was arrested and charged by amended criminal

---

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), 18 Pa.C.S.A. §§ 5111(a)(1), 6105(a), 3925(a), and 35 P.S. § 780-113(a)(32), respectively.

information with drug and firearm charges. Rivera-Hernandez filed a motion to suppress the evidence obtained from his home, person, and vehicle. The court held a hearing, where the parties submitted into evidence the search warrant and affidavit of probable cause. The parties stipulated that analysis of the motion to suppress concerned only the four corners of the warrant.

The trial court accurately summarized the warrant as follows, including that a confidential informant ("CI") advised the Pennsylvania State Police ("PSP") that Rivera-Hernandez was trafficking controlled substances from his residence and that the CI had engaged in three controlled buys with Rivera-Hernandez:

> In the March 17, 2022 Search Warrant and Affidavit of Probable Cause, Trooper Scott M. Grochowski, who is employed with the [PSP], Troop L-Reading Vice/Narcotics Unit (hereinafter, "the Affiant"), alleged that he believed [Rivera-Hernandez] was engaged in the illegal trafficking of controlled substances, specifically, heroin/fentanyl, in and around Pottsville, PA, as well as, that he believed [Rivera-Hernandez's] residence at 1419 West Market St., Pottsville, PA was being used by [Rivera-Hernandez], and possibly unknown others, in the commission of the aforementioned offenses for the storage and usage of controlled substances and the proceeds derived therefrom. The Application for Search Warrant requested permission to search [Rivera-Hernandez's] residence, and his 2019 gray Chevrolet Impala. The facts alleged by Trooper Grochowski in the Affidavit of Probable Cause to support his aforementioned beliefs, are summarized, in part, as follows.

> In early 2021, the CI advised the PSP and the Schuylkill County District Attorney's Office that "Jose", whom the CI subsequently identified as [Rivera-Hernandez] based upon a comparison of [Rivera-Hernandez's] Pennsylvania Operator License photograph, was trafficking heroin/fentanyl from his residence within Pottsville, PA. The

- 2 -

CI was reliable, in that he/she cooperated with law enforcement for several months; provided correct and accurate information related to narcotics traffickers; and, at the direction of law enforcement, conducted approximately eight (8) controlled purchases of narcotics. A search of the Pennsylvania Department of Transportation's records revealed that [Rivera-Hernandez's] address was listed on his operator's license as 1419 West Market St., Pottsville, PA 17901. Additionally, the PSP Gaming Board had conducted an independent investigation on [Rivera-Hernandez] and his paramour, Kristina Marie Mullen, which revealed that [Rivera-Hernandez] and Mullen resided at the aforementioned address.

In the Affidavit of Probable Cause, the Affiant further alleges that [Rivera-Hernandez] sold fentanyl to the CI during three separate controlled narcotics purchases, which occurred collectively between the dates of July 13, 2021 and March 16, 2022. The alleged facts related to the first controlled narcotics purchase are as follows. Between July 13, 2021 and July 15, 2021, the Affiant met with the CI at a predetermined location for the purpose of making a controlled purchase of heroin/fentanyl from [Rivera-Hernandez]. The CI was searched prior to, and following, the narcotics transaction. The CI was found to be free of controlled substances and/or currency. Prior to the transaction, the Affiant provided the CI with official currency to purchase narcotics. While under the surveillance of law enforcement officers, the CI proceeded to a parking lot in the area of Westwood Road, Pottsville, PA. [Rivera-Hernandez] met [the] CI within said parking lot, exited his vehicle, and proceeded to the CI's vehicle. The CI provided [Rivera-Hernandez] with the official currency, and [Rivera-Hernandez] provided the CI with suspected heroin/fentanyl. After the narcotics exchange occurred, the CI left the area and proceeded directly to the Affiant's location. The CI provided the Affiant with the suspected narcotics, and relayed that it had been given to him/her by [Rivera-Hernandez] during the narcotics transaction. Following the narcotics transaction, surveillance officers observed [Rivera-Hernandez] leave the parking lot, travel onto West Market St. towards his home, eventually park, and then enter his residence. The suspected heroin/fentanyl was transported to PSP-Frackville by the Affiant, where it was

field tested utilizing a NIK test kit "A", and proffered a positive reaction for the presence of fentanyl.

As for the second controlled narcotics purchase, it is alleged in the Affidavit of Probable Cause that, between October 18, 2021 and October 20, 2021, the Affiant met with the CI at a predetermined location for the purpose of making a controlled purchase of heroin/fentanyl from [Rivera-Hernandez]. The CI was searched prior to, and following, the narcotics transaction. The CI was found to be free of controlled substances and/or currency. Prior to the transaction, the Affiant provided the CI with official currency to purchase narcotics. While under the surveillance of law enforcement officers, the CI proceeded to a location agreed upon by [Rivera-Hernandez] on the east side of Pottsville, PA. [Rivera-Hernandez] arrived at the aforementioned location operating his 2019 gray Chevrolet Impala. The CI provided [Rivera-Hernandez] with the official currency, and [Rivera-Hernandez], while in his vehicle, provided the CI with suspected heroin/fentanyl. The Affiant witnessed the narcotics exchange. After the narcotics exchange, the CI left the area and proceeded directly to the Affiant's location. The CI provided the Affiant with the suspected narcotics, and relayed that it had been given to him/her by [Rivera-Hernandez] during the narcotics exchange. Following the narcotics transaction, surveillance officers observed [Rivera-Hernandez] drive away, and eventually park on the 1400 block of West Market St. The suspected heroin/fentanyl was transported to PSP-Frackville by the Affiant, where it was field tested utilizing a NIK test kit "A", and proffered a positive reaction for the presence of fentanyl.

With regard to the third controlled narcotics purchase, it is alleged in the Affidavit of Probable Cause that between[] March 14, 2022 and March 16, 2022, the Affiant met with the CI at a predetermined location for the purpose of making a controlled purchase of heroin/fentanyl from [Rivera-Hernandez]. The CI was searched prior to, and following, the narcotics transaction. The CI was found to be free of controlled substances and/or currency. The Affiant provided the CI with official currency to purchase narcotics before the narcotics exchange took place. While under the surveillance of law enforcement officers, the CI proceeded to a location agreed upon by [Rivera-Hernandez] on the east side of

Pottsville, PA. Prior to the transaction, surveillance officers observed [Rivera-Hernandez] leave his residence, and they followed [Rivera-Hernandez] to the area where the narcotics transaction was to occur. When [Rivera-Hernandez] arrived at the aforementioned location, he was operating his 2019 gray Chevrolet Impala. The CI provided [Rivera-Hernandez] with the official currency, and [Rivera-Hernandez], while in his vehicle, provided the CI with suspected heroin/fentanyl. The Affiant witnessed the narcotics exchange. After the narcotics exchange, the CI left the area and proceeded directly to the Affiant's location. The CI provided the Affiant with the suspected narcotics, and relayed that it had been given to him/her by [Rivera-Hernandez] during the narcotics exchange. Following the narcotics transaction, officers continued to conduct surveillance of [Rivera-Hernandez], they observed him park on the 1400 block of West Market St. and they witnessed [Rivera-Hernandez] enter his residence. The suspected heroin/fentanyl was transported to PSP-Frackville by the Affiant, where it was field tested utilizing a NIK test kit "A", and proffered a positive reaction for the presence of fentanyl.

Trial Court Opinion, filed Oct. 17, 2022, at 5-8 ("Suppression Opinion").

After the hearing, the parties submitted briefs. The trial court denied the suppression motion. After a stipulated bench trial, the court convicted Rivera-Hernandez of the above-referenced charges. In April 2023, the court imposed an aggregate sentence of 11 to 22 years' incarceration. Rivera-Hernandez filed a timely notice of appeal.

Rivera-Hernandez raises the following issue:

Whether the trial court erred in denying [Rivera-Hernandez's] motion to suppress physical evidence where the Commonwealth failed to prove that the search warrant executed on [Rivera-Hernandez's] residence contained the requisite probable cause demonstrating a substantial nexus between [Rivera-Hernadez's] criminal activity on the streets and any contraband within his home?

Rivera-Hernandez's Br. at 4.

Rivera-Hernandez argues that nothing in the affidavit suggested controlled substances would be located within his residence or that his residence was used in drug-related activities. He argues the CI never stated that he was present inside Rivera-Hernandez's residence or that he observed controlled substances there. He further points out that for the first two controlled buys the police only observed Rivera-Hernandez arriving at the agreed-upon locations in a vehicle, and they did not know his location prior to arrival. He further argues that for the third buy, although the police followed him from his home to the controlled buy, they did not observe him carrying anything out of his residence and into his vehicle. He maintains that "it remains equally plausible that the controlled substances . . . were already in the vehicle and did not originate from the residence." *Id.* at 16. He argues there is no meaningful connection between his residence and the criminal activity and argues the affidavit lacked sufficient facts to establish probable cause to believe Rivera-Hernandez was storing illegal drugs in his residence. Rivera-Hernandez maintains "[t]here is not a scintilla of information contained in the affidavit making it more likely than not that contraband was being stored in the residence identified in the warrant" and that "[a]bsent such information, the signing magistrate was left to rely on mere conjecture and speculation in deciding whether there was sufficient probable cause to issue a search warrant." *Id.* at 19.

We review a challenge to the denial of a suppression motion to determine "whether the suppression court's factual findings are supported by

the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010).

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution each require that search warrants be supported by probable cause. "The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." **Id.** (quoting **Commonwealth v. Edmunds**, 586 A.2d 887, 899 (Pa. 1991)). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." **Id.** (quoting **Commonwealth v. Thomas**, 292 A.2d 352, 357 (Pa. 1972)).

"The task of the issuing magistrate is . . . to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." **Commonwealth v. Clark**, 28 A.3d 1284, 1288 (Pa. 2011) (quoting **Commonwealth v. Gray**, 503 A.2d 921, 925 (Pa. 1985)) (emphasis omitted). "[T]he duty of a reviewing court is . . . to ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed.'" **Id.** (quoting **Gray**, 503 A.2d at 925) (some alterations in original).

"[A] determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." ***Commonwealth v. Gagliardi***, 128 A.3d 790, 795 (Pa.Super. 2015) (quoting ***Clark***, 28 A.3d at 1288). "[A]n informant's tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." ***Id.*** at 795-96 (citation omitted).

Further, "probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1049-50 (Pa. 2012) (quoting ***Commonwealth v. Heyward***, 375 A.2d 191, 192 (Pa.Super. 1977)). The affidavit of probable cause must establish a nexus between the suspect's home and the criminal activity or contraband sought to permit the search of the home. ***Id.*** at 1050.

In ***Clark***, the affidavit of probable cause stated that a reliable confidential informant had informed the affiant that the defendant packaged and distributed cocaine out of his residence and made deliveries in his vehicle. 28 A.3d at 1285. The affidavit further stated that the police conducted a controlled buy where they observed the defendant depart his residence, enter a car, and drive to the pre-arranged site. ***Id.*** The police observed the confidential informant purchase cocaine from the defendant and followed the

defendant back to his residence. *Id.* The trial court granted the defendant's suppression motion and this Court affirmed.

The Pennsylvania Supreme Court concluded that the trial court and this Court had "discounted the common sense import of the fact that after the controlled buy was arranged, the police observed [the defendant] leave his residence in his vehicle, as precisely described by the CI, drive to a location, conduct the transaction, and immediately return to his residence." *Id.* at 1291. It stated that the facts connected the illegal transaction to the residence "in a common sense, non-technical way, and permitted the issuing authority to conclude that drugs would likely be found in the residence." *Id.* The Court reasoned that although "the circumstances of the observed transaction also potentially pointed to [the defendant's] vehicle as a storage location for the drugs, the law does not require that the information in a warrant affidavit establish with absolute certainty that the object of the search will be found at the stated location, nor does it demand that the affidavit information preclude all possibility that the sought after article is not secreted in another location." *Id.* (citation omitted). The Court concluded that under the totality of the circumstances test there was a sufficient connection between the residence and the transaction to corroborate the CI's information that drugs were stored in the residence and to support a determination of probable cause to search the residence. *Id.*

Here, the trial court did not err in denying the motion to suppress. As in *Clark*, a reliable CI informed the affiant that Rivera-Hernandez dealt drugs

out of his home, and the police observed Rivera-Hernandez leave from his home and proceed directly to a controlled buy on one occasion. Further, for all three controlled buys, the police observed Rivera-Hernandez return to the residence immediately after the controlled buy. When viewed in a commonsense, non-technical way, the affidavit provided probable cause to believe drugs would be found in the residence. Further, as the Court concluded in **Clark**, that Rivera-Hernandez also could have been secreting the controlled substances in his vehicle did not require a finding that probable cause to search the home did not exist. The affidavit was not required to establish with certainty that the controlled substances would be found in the home and was not required to eliminate other potential storage locations. Accordingly, we conclude the affidavit of probable cause contained sufficient information to provide a nexus between the residence and the illegal activity and that the trial court did not err in finding the magistrate had a substantial basis to issue the warrant.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/15/2023

- 10 -