J-S76020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROY R. MOSES | |
| Appellant | No. 220 EDA 2016 |

Appeal from the Judgment of Sentence entered August 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-15-CR-0001275-2012

BEFORE:  PANELLA, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 30, 2018**

Appellant, Roy R. Moses, appeals from his judgment of sentence of 6-12 years' imprisonment for possession with intent to deliver a controlled substance ("PWID").[1]  We affirm.

On November 17, 2011, Appellant was arrested during the execution of a search warrant at an apartment rented by Angel Morales at 1520 Mount Vernon Street in Philadelphia.  While police officers were searching the apartment, they observed Appellant stepping away from an open window.  On the ground outside the window, the officers discovered several bags of crack cocaine, marijuana, and oxycodone along with a broken plate, a razor blade

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

and a cell phone. Appellant was charged with PWID and other drug-related offenses.

Appellant moved to suppress the evidence seized during the execution of the warrant. On April 28, 2015, the trial court denied Appellant's suppression motion, and the case immediately proceeded to a jury trial against Appellant and two co-defendants, Morales and Glen Harvill. On May 1, 2015, the jury found Appellant guilty of PWID and possession of drug paraphernalia. On August 19, 2015, the trial court imposed the above-mentioned sentence for PWID to run consecutively to Appellant's federal sentence for a firearms violation. The trial court did not impose any further penalty for possession of drug paraphernalia. On August 20, 2015, Appellant filed timely post-sentence motions challenging, *inter alia*, the weight of the evidence against him. By order entered on December 21, 2015, these motions were denied by operation of law. On January 18, 2016, Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal:

[1.] Did the trial court err when it denied [Appellant]'s pre-trial motion to suppress a firearm and controlled substances recovered from a residence he was present inside for the following reasons: (1) the affidavit in support of [the] search warrant . . . did not set forth probable cause to search the residence as the facts known to the issuing authority did not establish that it was more likely than not or probable that contraband or evidence of a crime was located in the property searched; (2) the items sought in the warrant were not contraband or evidence of criminal activity; (3) the affiant misstated facts and/or omitted material facts from the

affidavit in support of the search warrant which are material to the existence or non-existence of probable cause, namely: that police already knew that the items to be searched for were possessed by another individual and taken by her to her separate home; that police had interviewed that woman at her home and she gave a voluntary statement to police and turned over all of the items which police asked her to surrender; that police did not ask this woman to surrender the items sought in the affidavit; that police did not ask the woman where the items sought in the affidavit were located; that police recovered the items sought in the affidavit from that woman's home; that police chose to execute the warrant at the residence [Appellant] was found in before searching the woman's home despite the fact that same police officers were in possession of a warrant to search that woman's home for the same items?

[2.] Did the trial court err when it denied [Appellant]'s motion to dismiss based on Pa.R.Crim.P. 704 due to a violation of [Appellant]'s right to be sentenced in a timely manner?

[3.] Is the verdict of guilty . . . against the weight of the evidence and . . . so contrary to the evidence that it shocks one's sense of justice as the evidence properly received at trial does not establish [Appellant]'s possession or constructive possession of a controlled substance or drug paraphernalia?

[4.] Is the aggregate sentence imposed unduly harsh and excessive under the circumstances as it fails to take into account all relevant and necessary factors to be considered by a sentencing court, including, inter alia, [Appellant]'s serious medical conditions and past victimization and abuse, and/or is based upon factors or evidence which should not be relied upon by a sentencing court[?]

Appellant's Brief at 8-9.

In his first argument, Appellant contends that the trial court erred by denying his motion to suppress all evidence seized during execution of the search warrant at Morales' apartment on November 17, 2011. According to Appellant, the warrant did not furnish probable cause that evidence of crime

would be found in Morales' apartment. When reviewing the denial of a suppression motion,

> [our review] is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress. *In re L.J.*, 79 A.3d 1073, 1083-87 (Pa. 2013).

*Commonwealth v. Mathis*, 125 A.3d 780, 783 (Pa. Super. 2015).

> When deciding whether to issue a search warrant,

> the task of the issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Commonwealth v. Gagliardi*, 128 A.3d 790, 794 (Pa. Super. 2015) (citations omitted). The reviewing court should not conduct a *de novo* review of the issuing authority's probable cause determination but should simply determine whether there is substantial evidence in the record supporting the decision to issue a warrant. *Id.* at 794. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and

must view the information offered to establish probable cause in a common-sense, non-technical manner. *Id.* Although reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause, the deference afforded an issuing authority ensures that if a substantial basis exists to support the issuing authority's probable cause finding, the trial court must uphold that finding even if a different issuing authority might have found the affidavit insufficient to support a warrant. *Id.* at 795.

"The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." *Commonwealth v. Edmunds*, 586 A.2d 887, 899 (Pa. 1991). Again, probable cause requires that the affidavit establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gagliardi*, 128 A.3d at 794, 795 (citation omitted). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Id.* at 796 (citation omitted). Probable cause "must be based [up]on facts described within the four corners of the supporting affidavit." *Id.*

"A search warrant may be issued to search for and to seize . . . property that constitutes evidence of the commission of a criminal offense." Pa.R.Crim.P. 201(3). This rule derives from *Warden v. Hayden*, 387 U.S. 294 (1967), in which the United States Supreme Court held that "nothing in

- 5 -

the Fourth Amendment supports a distinction between contraband and 'mere evidence,' [and therefore] evidence of a crime is clearly subject to search and seizure under the Fourth Amendment." *Commonwealth v. Jones*, 988 A.2d 649, 658 (Pa. 2010) (discussing *Warden*); *see also* Comment, Pa.R.Crim.P. 201(3) (citing *Warden*).

The search warrant in question requested permission to search Morales' apartment at 1520 Mount Vernon Street in Philadelphia for evidence of firearms violations under 18 Pa.C.S. § 6111. Agent Martin Dietz, a member of the Gun Violence Task Force with the Attorney General's Office, stated the following in an affidavit of probable cause underlying the warrant:

> On Sunday[,] November [1]3, 2011, Brigitte A. HAUG was observed by the affiant and other members of the Gun Violence Task Force at the Appalachian Gun Show at the Philadelphia National Guard Armory[,] Southampton Rd. and Roosevelt Boulevard[,] Philadelphia PA. HAUG was alone and in a short period of time purchased two firearms at two separate firearm dealers. Those firearms were a Glock 10 mm model 20 serial #UW469US and a Glock .357 Sig model 31 serial #PKR407. She was also observed buying ammunition for those firearms.
>
> As HAUG was exiting the gun show she met with two males at the doorway and walked to a vehicle in the parking lot. HAUG handed the bag containing both firearms to the male at the front passenger seat. The three then drove off together.
>
> On Monday November 14, 2011[,] the affiant with Special Agent Joseph Hasara #441 met with HAUG at her residence at 1625 Brown St. After the affiant and SA Hasara were identified as Special Agents with the Gun Violence Task Force[,] HAUG was engaged in conversation regarding her purchase of the two pistols. HAUG said she had one pistol, the Glock .357 Sig at her residence. She said she had given the second pistol, the Glock 10 mm to her friend "Angel" who had been at the gun show with her.

HAUG agreed to accompany the affiant and SA Hasara to Central Detective Division.  After being advised of her Constitutional Rights and the investigation[,] HAUG gave a six page handwritten/typed and signed statement.  HAUG produced identification in the form of a Pennsylvania Department of Transportation Operator's License # [XXXXXXX] with the address of 1625 Brown St. Philadelphia, PA.  In that statement[,] HAUG told the affiant she had purchased the two above[-]described firearms at the gun show on Sunday[,] November 13, 2011[,] and had completed the forms required to purchase a firearm legally in the state of PENNSYLVANIA.

HAUG said that later on that same date[,] she met with Angel MORALES at 17th and Fairmount Sts.[,] Philadelphia, PA and gave the Glock 10 mm model 20 serial #UW469US, two magazines and the firearm box all in a red cloth bag to MORALES.  MORALES then left the area with the firearm, magazines and box still in the bag.  HAUG also said she had loaded two magazines for the Glock .357 Sig which she kept at her residence and loaded both magazines for the Glock 10mm before giving it to MORALES.

HAUG provided the affiant with a cell telephone number for MORALES.  At the conclusion of HAUG's statement[,] she contacted MORALES via telephone and requested he bring the Glock 10mm to Central Detective Division.  MORALES refused.  The affiant then contacted MORALES via telephone and explained the ongoing investigation and requested he bring the Glock 10mm to Central Detective Division.  About forty-five minutes later[,] MORALES arrived at Central Detective Division with the firearm.  The firearm and two magazines were in a red cloth bag.  Both magazines were unloaded and MORALES had no ammunition for the firearm.

MORALES produced identification in the form of Pennsylvania Department of Transportation Operator's License # [XXXXXXX] with the address of 1520 Mount Vernon St. Apt. B Philadelphia, PA.  The affiant checked PENNDOT resources and verified MORALES' address.  SA Hasara advised MORALES of his Constitutional Rights and the ongoing investigation.  MORALES agreed to give a statement regarding the firearm he was surrendering.  MORALES told SA Hasara that he had gone to the gun show on November 13, 2011 with HAUG and a male he knows as "Roy".  Later that evening MORALES said HAUGE [sic] had given him the red cloth bag containing the Glock 10 mm pistol and

two magazines at 17th and Fairmount Sts.  MORALES said the firearm and both magazines HAUG had given him were not loaded and he had received no ammunition from HAUG with the firearm.

Based on the above facts and conflicting information provided by Brigitte HAUG and Angel MORALES[,] the affiant requests issuance of [a] Search and Seizure Warrant for 1250 Mount Vernon St.[,] apartment B[,] Philadelphia, PA 19130 to search for the listed items:

Any/all documents and/or packaging relating to a Glock 10mm model[;]

20 serial #UW469US[;]

Any/all documents and/or packaging relating to a Glock .357 Sig caliber model 31 serial #PKR407[;]

Any/all 10mm pistol rounds (new);

Any/all .357 Sig caliber rounds (new).

The statute in the Crimes Code that regulates sales or transfers of firearms, 18 Pa.C.S.A. § 6111, provides in pertinent part:

**(c) Duty of other persons.—** Any person who is not a licensed importer, manufacturer or dealer and who desires to sell or transfer a firearm to another unlicensed person shall do so only upon the place of business of a licensed importer, manufacturer, dealer or county sheriff's office, the latter of whom shall follow the procedure set forth in this section as if he were the seller of the firearm.  The provisions of this section shall not apply to transfers between spouses or to transfers between a parent and child or to transfers between grandparent and grandchild.

18 Pa.C.S.A. § 6111.

Section 6111's penalty provision prescribes: "Any person, licensed dealer, licensed manufacturer or licensed importer who knowingly or intentionally sells, delivers or transfers a firearm in violation of this section

- 8 -

commits a misdemeanor of the second degree."  18 Pa.C.S.A. § 6111(g)(1).

The penalty provision also states: "Any person, purchaser or transferee who

in connection with the purchase, delivery or transfer of a firearm under this

chapter knowingly and intentionally makes **any** materially false oral or written

statement . . . commits a felony of the third degree."  18 Pa.C.S.A. §

6111(g)(4) (emphasis added).  Subsection (g)(4) "is broadly worded" because

the legislature's intent was to criminalize **any** false statement in connection

with the purchase, delivery or transfer of a firearm in this Commonwealth.

***Commonwealth v. Baxter***, 956 A.2d 465, 471 (Pa. Super. 2008) (*en banc*).

Here, the affidavit of probable cause alleges that on November 13, 2011,

Agent Dietz and other law enforcement agents observed Brigitte Haug

purchase two firearms at a gun show (a Glock 10 mm model 20 and a Glock

.357 Sig model 31) as well as ammunition.  Haug carried a bag containing the

firearms outside and handed the bag to a male sitting in a car in the parking

lot.  The next day, November 14, 2011, the agents spoke with Haug at her

residence.  Haug stated that she gave only one firearm, the Glock 10 mm gun,

to her friend "Angel," who had been at the gun show with her.  Haug further

stated that she had the second firearm, the Glock .357 Sig, in her apartment.

Later on November 14, Haug stated that she met Angel Morales at 17th and

Fairmount Streets in Philadelphia (a different location than the gun show) and

gave Morales a bag containing one Glock 10 mm firearm, two magazines and

the firearm box.  She also stated that she loaded both magazines with

ammunition before giving them to Morales. Haug contacted Morales, who arrived at the police station 45 minutes later with a bag containing the Glock 10 mm firearm and two magazines, but no ammunition. He admitted attending the gun show with Haug and admitted that Haug gave him the Glock 10 mm firearm and the magazines, but he claimed that the firearm was not loaded and that Haug had not given him ammunition. He also admitted that his address was 1520 Mt. Vernon Street, Apartment B, in Philadelphia.

This evidence provided probable cause to issue the search warrant for Morales' apartment. Law enforcement officials saw Haug give a bag containing **two** firearms to another man outside of the gun show in northeast Philadelphia. Morales and Haug gave accounts that conflicted with the law enforcement official's observations and with one another's account. Morales admitted attending the gun show with Haug but claimed that he received one firearm from Haug, without ammunition, at a different location than the gun show. Haug claimed that she gave one firearm to Morales at a different location than the gun show but also gave him two magazines loaded with ammunition. Viewed collectively, these facts established probable cause that (1) Haug violated Section 6111(c), and was criminally liable under Section 6111(g)(1), for transferring two firearms within in an unauthorized location, i.e., a location other than those permitted under subsection (c); (2) Morales was criminally liable under Section 6111(g)(4) by falsely stating that he received only one firearm from Haug without ammunition; (3) Haug was

criminally liable under Section 6111(g)(4) by falsely stating that she had transferred only one firearm to Morales; and (4) evidence of these crimes (the second firearm and ammunition) would be found in Morales' apartment.

In Appellant's view, the affidavit does not provide probable cause to believe that the second firearm was in Morales' apartment, because Haug said that this firearm was in her apartment. Appellant overlooks the principle, however, that false or conflicting responses to officers' questions, in conjunction with other evidence, may establish probable cause. **_See_** **_Commonwealth v. Johnson_**, 42 A.3d 1017, 1031-32 (Pa. 2012) (probable cause existed for search warrant, where in initial affidavit, police indicated victim had been injured, injury occurred at the residence, mother indicated defendant assaulted victim, there were conflicting accounts of how victim had been injured, and there was likely to be evidence pertaining to the injury in the residence, and second affidavit indicated that victim had died after being assaulted, and prior search uncovered blood spatter that might have come from victim); **_see also_** LaFave, 2 Search & Seizure § 3.6(f), nn. 212-215 (5th ed.) (collecting cases in which responses that officers knows are false, or which are implausible or conflicting, amount to probable cause in conjunction with other circumstances). Haug's statement conflicted with the officers' observation of the transfer of both firearms from Haug to a male outside of the gun show. This conflict, along with the other evidence, provided probable

cause to search Morales' apartment for the second firearm.  For these reasons, Appellant's first argument fails.[2]

In his second argument, Appellant contends that the trial court erred in refusing to discharge him because he was not sentenced within ninety days after conviction.  We disagree.

Pa.R.Crim.P. 704(A) requires the trial court to sentence the defendant within ninety days after conviction.  The trial court sentenced Appellant on August 19, 2015, 111 days after his guilty verdict.  When a delay of more than ninety days takes place, the court must examine the totality of the circumstances underlying the delay, including "(1) the length of the delay [for which there was no good cause,] (2) the reason for the improper delay, (3) the defendant's timely or untimely assertion of his rights, and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights." *Commonwealth v. Anders*, 725 A.2d 170, 172-73 (Pa. 1999).

While the present case was pending, Appellant was arrested for a federal firearms violation and held in custody at a federal detention center.  Following Appellant's conviction in this case,

> sentencing was originally scheduled for July 10, 2015.  The July 10, 2015 order, continuing sentencing to July 30, 2015, was the result of the federal facility failing to honor the writ execute[d] by the Commonwealth.  The July 30, 2015 order, continuing sentence

---

[2] Appellant also argues that he had a reasonable expectation of privacy in Morales' apartment.  Assuming that Appellant had a reasonable expectation of privacy, the search warrant established probable cause to search Morales' apartment.

for a video sentencing on August 10, 2015, was the result of technical difficulties at the federal facility. The August 10, 2015 order, continuing video sentencing until August 19, 2015, was the result of lock down at the federal facility.

Trial Ct. Op., 4/15/17, at 25. These delays were the result of issues in the federal detention system that were beyond the Commonwealth's control. Because none of this delay was the fault of the Commonwealth, Appellant's Rule 704 argument fails.

In his third argument, Appellant contends that the verdict was against the weight of the evidence.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000).

The trial court held that Appellant failed to preserve a weight of the evidence claim by failing to state this issue with sufficient specificity in his post-sentence motions or in his Pa.R.A.P. 1925(b) statement. Although Appellant could have stated his claim with greater specificity in his post-sentence motions and Pa.R.A.P. 1925 statement, we will address the substance of Appellant's argument.

- 13 -

Appellant argues: "When [Appellant's] mere presence in one bedroom near a window is viewed together with all of the other facts relating to the presence of drugs or firearms on or physically near every other co-defendant, the finding . . . [that he] possessed the narcotics discovered in the yard . . . cannot be said to be based upon reason." We disagree. During the execution of the search warrant at Morales' apartment on November 17, 2015, Agent Joseph Hasara discovered Appellant in a third floor bedroom "by an open window. He was slightly bent over stepping away -- straightening up and stepping away from the window." N.T., 4/30/15, at 18. When the agent first saw Appellant, he was "right at the window," which was "wide open." *Id.* at 19. After securing Appellant and taking him downstairs, Agent Hasara

> went back into that room, [and] I looked out the window and I saw various bags – white bags, a black bag. There was candy out there. There was candy in the windowsill and it appeared as though the candy had been knocked out the window when I believe [Appellant] threw other items out the window.

*Id.* at 18. The items were lying in an alcove to which "there was no access from the outside of the property[,] so we wound up going downstairs through the basement out a basement door to get to that location." *Id.* at 21. On the ground directly outside the window, Agent Hasara recovered various bags of candy (believed to be used for drug packaging), multiple bags of crack cocaine, marijuana, and oxycodone, a broken plate, a razor blade and a cell phone. *Id.* at 17-32.

This evidence clearly demonstrates that Appellant was in possession of controlled substances and threw them out the window. The record does not reflect that any other occupant of the apartment had access to this window. The jury was free to believe all, part or none of this evidence, and it chose to believe this evidence. Thus, we affirm the trial court's decision denying Appellant's challenge to the weight of the evidence, albeit for different reasons than the trial court. **See Commonwealth v. Judge**, 916 A.2d 511, 517 n. 11 (Pa. 2007) ("this Court may affirm on any ground").

Finally, Appellant argues that the trial court abused its discretion in fashioning his sentence by supposedly failing to consider his rehabilitative needs and other mitigating factors, and by imposing his sentence consecutive to his federal confinement on unrelated charges.

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010). Here, Appellant satisfies the first three requirements of the **Moury** test. Appellant filed a timely appeal to this Court, preserved the issue on appeal through his post-sentence motions, and submitted a Pa.R.A.P. 2119 statement in his brief.

Turning to the fourth requirement, we have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa. Super. 2008). This Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). Bald excessiveness claims premised on imposition of consecutive sentences do not raise a substantial question for our review. *Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015) (*en banc*) ("[a] court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question[ ]"). Appellant here claims only that his sentence was harsh and excessive because the trial court (1) ordered it to run consecutively to his federal sentence, and (2) failed to consider mitigating factors such as Appellant's poor health and unfortunate upbringing. Neither of these allegations raises a substantial question as to the appropriateness of his sentence. *Caldwell,* 117 A.3d at 769 (consecutive sentences); *Commonwealth v. Rhodes*, 8 A.3d 912, 918-19 (Pa. Super. 2010) (mitigating factors).

Even if we were to determine that Appellant's discretionary aspect of sentencing claim raised a substantial question, we still would conclude that he is not entitled to relief. Sentencing is a matter vested in the sound discretion

of the sentencing judge and will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Smith*, 673 A.2d 893, 895 (Pa. 1996). The trial court acted within its discretion in fashioning Appellant's sentence. The court reviewed Appellant's pre-sentence report (N.T. 8/19/15, 25), which reflected a prolonged criminal history spanning roughly twenty-one years and included numerous violent and firearms-related offenses. Additionally, while Appellant was released on bail in this case, he sold three firearms to undercover federal agents and assured them that he could sell more. Taking these factors into account, the trial court properly deemed Appellant a danger to society and determined that the protection of the public warranted a sentence of 6-12 years' imprisonment consecutive to his federal sentence for selling handguns.

The record does not support Appellant's contention that the court failed to take into account his rehabilitative needs and other mitigating factors. The trial court reviewed Appellant's pre-sentence report, heard his allocution, and heard his counsel make these arguments during sentencing. The court simply weighed those factors differently than Appellant would have liked. He thus asks this Court to second-guess the careful consideration of the trial court, which we shall not do. *Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa. Super. 2010) (appellate court will not reweigh mitigating factors).

Appellant also complains that the court ordered the instant sentence consecutive to his federal punishment for selling firearms, supposedly

resulting in an "effective life sentence." That determination, however, was well within the court's discretion. ***Commonwealth v. Graham***, 661 A.2d 1367, 1373 (Pa. 1995) ("the general rule in Pennsylvania is that in imposing a sentence[,] the court has discretion to determine whether to make it concurrent with or consecutive to other sentences then being imposed or other sentences previously imposed"). It was appropriate in this case, given the court's concern that Appellant presented a threat to the safety of the community. N.T., 8/19/15, at 25. The court expressed its concern, stating:

> I find it appalling that while you were out on the streets pending this case that you were actually actively involved in selling weapons that kill the citizens of our city. I do not think you are subject to rehabilitation based upon your record . . . And I fear that when you get back out you will be doing the same things you did before you were incarcerated.

***Id.*** Moreover, Appellant did not effectively receive a life sentence; he will complete this sentence while he is in his fifties. Appellant's Brief at 59.

Accordingly, we reject Appellant's challenge to the discretionary aspects of his sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/18

- 18 -