J-S11016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES PERRY | : | |
| | : | |
| Appellant | : | No. 696 WDA 2016 |

Appeal from the Judgment of Sentence May 9, 2016
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s):  CP-65-CR-0003361-2011,
CP-65-CR-0003372-2011

BEFORE:   OLSON, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY RANSOM, J.:                    **FILED APRIL 17, 2017**

Appellant, James Perry, appeals from the judgment of sentence of an aggregate eight to sixteen years of incarceration followed by five years of probation, imposed May 9, 2016, following a jury trial resulting in his conviction for multiple counts of manufacture, delivery or possession with intent to deliver.[1]  We affirm.

The relevant facts and procedural history are as follows.  In March 2010, Agent Richard Miller initiated an investigation of Appellant that included extensive surveillance of Appellant's heroin distribution operation.  *See* Trial Ct. Op., 6/9/2010, at 1-2.  Agent Miller received information from

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30)

a confidential informant that Appellant had sold him heroin approximately fifty times between December 2009 and March 2010. *See id*. Between the months of March 2010 and February 2011, Agent Miller utilized several confidential informants to carry out wiretaps authorized by the attorney general. *See id.* at 2-4. He also provided confidential informants with marked cash to facilitate their purchases of heroin from Appellant. *See id.* at 2. Appellant would leave his residence located at 218 Bonnie Street, drive to 814 Park Avenue, enter the residence for brief amounts of time, exit the residence, drive to a local shopping mall where he would engage in numerous brief exchanges in the parking lot, and then return to the 814 Park Avenue residence. *See id.* at 2-3. In June 2010, Agent Miller observed Kimberly Kibelbek ("KK") and Appellant move furniture out of the 814 Park Avenue location to 423 Third Street in Moneseen. *See id.* at 3. A confidential informant confirmed to Agent Miller that KK resided at these residences. *See id.* at 4.

After several controlled buys through confidential informants, Agent Miller concluded that Appellant utilized the residences located at 814 Park Avenue and 423 Third Street, where KK resided, as stash houses. *See id.* at 2-5. On certain occasions, Agent Miller observed Appellant travel to his residence at 218 Bonnie Street after he left 423 Third Street. *See id.* at 4. Based on his observations, Agent Miller believed marked cash from the controlled buys they executed would be found at 218 Bonnie Street. *See id.* at 5 (citing Search Warrant, ¶¶ 42-45).

In February 2011, Agent Miller prepared an affidavit of probable cause to search 423 Third Street and 218 Bonnie Street and authorizing searches of Appellant's person and KK's person. *See id.* at 5. On February 25, 2011, District Judge Joseph DeMarchis issued search warrants for the two residences that also authorized the search of their persons. *See* TCO at 5 (citing Notes of Testimony (N.T.), 2/1/2016-2/5/2016 (Trial), at 112-114). Around 9:48 a.m. on the same day, Agent Miller observed Appellant's white Ford truck parked in front of 423 Third Street. TCO at 5. Appellant entered the first floor of the residence, remained inside for a short period of time, and returned to his truck. *Id.* As Appellant drove away from the house, police conducted a traffic stop on Appellant and subsequently detained him. *Id.* **at 5-6.**

> Chief Manderino and Chief Gibson then ordered Appellant at gunpoint to exit the vehicle. N.T. 242. The officers handcuffed Appellant, conducted a pat down search, and found two baggies of a white powdery substance in the brim of Appellant's hat. N.T. 243-244. Appellant stated that the drugs were his and that they were for personal use. N.T. 244. At this point, the officers placed Appellant in the patrol car. N.T. 244. Chief Manderino witnessed Appellant making strange movements while handcuffed in the back of the patrol car. N.T. 244. After observing such movements, Chief Manderino warned Appellant not to hide any narcotics because they will find them. N.T. 246. Once at the station and at the commencement of the search, Appellant told the Officers that he had more heroin in his sock. N.T. 246. The Officers then located three (3) more corner baggies of heroin. N.T. 246, 249. During the search, Chief Manderino also found other items on Appellant's person, including $978.00 in U.S. currency. N.T. 247. Chief Manderino removed the following items from Appellant's person during the search: two Lowes receipts, an owner's card for the 1999 Ford F-250 that indicated that the owner of the vehicle was Davida

Perry with an address of 218 Bonnie Street, Belle Vernon, and insurance card with the same information. N.T. 251. Chief Manderino further found a key ring that contained four keys and a "legal shield" card, which explained one's constitutional rights. N.T. 251.

TCO at 7.[2]

Around 10:00 a.m. on the same day, Agent Clinton Thomas Ferris of the Attorney General's Office, Bureau of Narcotics, along with other officers, executed the search warrant at the 218 Bonnie Street location. *See* TCO at 7-8 (citing N.T., Trial, 272-312). Officers also seized, *inter alia*, a black safe, a .9mm Taurus firearm, two loaded magazines, a fur coat, a box of ammo, and loan documents. *See* TCO at 8 (citing N.T. at 277-282). Although no drugs were found at 218 Bonnie Street, police found fourteen thousand dollars in cash in a footstool at the end of the bed in the master bedroom.

With regard to the money found in the footstool at 218 Bonnie Street, the money was put through a scanner, and eight (8) $20.00 bills matched the serial numbers that were already in the machine from a report dated February 23, 2011. N.T. 360 -367. On February 23, 2011, those same eight (8) bills were used by the police for 'buy money,' and given to a confidential informant [whom Agent Miller observed make a purchase from Appellant and return with a small amount of heroin with the $160.00 no longer in his possession.].

TCO at 9; *see also* N.T. at 284. .

_____

[2] Police executed the warrant to search 423 Third Street and confiscated several items, including a green safe. *See* TCO at 6. After obtaining Appellant's written consent, Agent Miller used the key found on Appellant's person to open the safe. *See* TCO at 9. Agent Miller found heroin, cocaine, crack-cocaine, and a non-controlled substance in the safe. *See id.*

In November 2011, Appellant filed a motion to suppress evidence seized pursuant to the search warrant. The court denied this motion by opinion and order on May 22, 2012. In February 2016, following a jury trial, Appellant was convicted of all counts.[3] In May 2016, Appellant was sentenced as described above.

Appellant timely filed a notice of appeal and court-ordered 1925(b) statement. The trial court issued a responsive opinion.

On appeal, Appellant raises the following issues:

1. Whether the suppression court erred in denying the Appellant's omnibus pretrial motion seeking to suppress the evidence obtained by Agent Miller of the Attorney General's Office through the execution of two search warrants?

2. Whether the trial court erred in finding the evidence sufficient to sustain a verdict of guilty on the count of 35 P.S. § 780-113(a)(30), possession with intent to deliver a controlled substance?

Appellant's Br. at 9.

First, Appellant contends that the search warrant was (1) "overbroad" to permit a search of his residence at 218 Bonnie Street, (2) anticipatory to permit a search of Appellant's person without probable cause, (3) based on information that was not reliable, and/or (4) based on stale information. Appellant's Br. at 23. Our standard of review is as follows.

---

[3] Appellant's first trial was declared a mistrial due to a hung jury in April 2015.

In reviewing the ruling of the suppression court, this Court is "limited to determining whether the record supported that court's factual findings and whether the legal conclusions that the suppression court drew from those facts were correct." *Commonwealth v. Torres*, 764 A.2d 532, 537-38 (Pa. 2001) (citations omitted). "Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Bomar*, 826 A.2d 831, 842 (Pa. 2003).

The Pennsylvania and United States Constitutions require that search warrants be supported by probable cause governed by the practical, nontechnical "totality of the circumstances test" established in *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). *See* U.S. CONST. amend. IV; PA. CONST. art. I, § 8.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing] that probable cause existed.'

*Commonwealth v. Gray*, 503 A.2d 921, 925 (Pa. 1985) (quoting *Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). "Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's

- 6 -

legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Jones*, 988 A.2d 639, 654 (Pa. 2010) (citations and internal quotation marks omitted). "[A] reviewing court [is] not to conduct a de novo review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant." *Jones*, 988 A.2d at 655 (quoting *Torres*, 764 A.2d at 540). "In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner." *Torres*, 764 A.2d at 538 (citation omitted).

First, Appellant contends that the warrant to search his residence at 218 Bonnie Street was overbroad. According to Appellant, there was no "substantial nexus" between the suspected illegal activity and the premises to be searched because the affidavit of probable cause failed to set forth facts to suggest that 218 Bonnie Street was instrumental to any illegal activity. *See* Appellant's Br. at 24-25 (citing in support *Commonwealth v. Way*, 492 A.2d 1151, 1154 (Pa. Super. 1985) ("[L]ack of substantial nexus between the street crime and the premises to be searched renders the warrant facially invalid.")).

This Court has previously found *Way* distinguishable.

> In *Way*, the affidavit of probable cause merely declared that: the defendant was a drug dealer; an "alleged [drug] transaction occurred in [the defendant's] blue van along a country road[; and, a]fter the alleged [drug] transaction, police followed the blue van to a driveway of a property" that was owned by the defendant. *Way*, 492 A.2d at 1152–54. Confronted with this affidavit, the *Way* Court held that there were "[insufficient] facts to believe that drugs would be found" in the defendant's house and that the search warrant for the defendant's house was thus defective. *Id.* at 347.

*Commonwealth v. Gagliardi*, 128 A.3d 790, 798 (Pa. Super. 2015) (distinguishing *Way* where the magistrate had a substantial basis to believe that facts established that defendant used his home as "a **base** of illicit operations," *id.* at 797 (emphasis in original)).

Here, the facts summarized in the affidavit established that Appellant maintained stash houses at 423 Third Street and 814 Park Avenue. The police independently corroborated this information by observing Appellant travel back and forth to these locations, sometimes driving erratically and often meeting with suspected customers for only a few minutes. *See Clark*, 28 A.2d at 1288. Police facilitated controlled buys wherein confidential informants would participate in drug transactions, exchanging marked cash for drugs. Following these transactions, Appellant returned to his personal residence at 218 Bonnie Street.

According to the Commonwealth, it does not require a "leap of faith to conclude that important evidence of [Appellant's] drug trafficking would be found at his home." Commonwealth's Br. at 22. We agree. Just because Appellant conducted the majority of his illegal activities outside of his

personal residence does not render the warrant to search his home facially invalid where it was clearly supported by probable cause that police would likely find the fruits of his crimes therein. **See Gagliardi**, 128 A.3d at 797 (looking to the four corners of the affidavit, police independently corroborated tips of confidential informants by conducting controlled purchases of illegal drugs sufficient to create probable cause to search defendant's home where defendant left home prior to drug sales and returned to his home after the drug sales). Based on the totality of the circumstances, the affidavit provided the issuing authority with a substantial basis to find that there was probable cause to believe that evidence tending to link Appellant to illegal drug activity would be found at his 218 Bonnie Street residence. **Torres**, 764 A.2d at 544. Thus, we conclude that the issuing authority possessed a substantial basis for determining there was a fair probability that contraband would be found at Appellant's residence located at 218 Bonnie Street. Based upon common sense and the information available to the issuing authority, the search warrant was supported by probable cause.

Next, Appellant contends that the warrant to search Appellant's person was "an anticipatory search warrant" and was not supported by sufficient probable cause in his arrest. Appellant's Br. at 27. In support of his argument, Appellant cites **Commonwealth v. Glass**, 754 A.2d 655, 661 (Pa. 2000) (noting that the proper standard to apply is probable cause consistent with **Gates, supra** and **Gray, supra**). According to Appellant,

probable cause exists where the affidavit presents reliable information "which would cause a reasonable man to believe that a crime is being, or is about to be committed." Appellant's Br. at 28 (quoting **Commonwealth v. Baker**, 518 A.2d 802, 805 (Pa. 1986)).

Appellant suggests that the warrant to search his person was invalid because he was not *per se* committing a crime when he was stopped by police. Contrary to Appellant's suggestion,

> [a]nticipatory search warrants pose no threat to settled views of probable cause. The very nature of a search warrant is in a sense "anticipatory." Time being a continuum, the analysis cannot be otherwise. Warrants authorize future searches, not searches into the past. There is always a lag between the underlying observation, the representations of the affiant, the issuance of the warrant, and its ultimate execution. Presented with a series of factual averments, the magistrate must determine, or anticipate, whether there is a fair probability that evidence of a crime 'will be found' in a particular place when the warrant is executed. Although probable cause unquestionably must exist at the time the warrant is authorized, **see, e.g., Commonwealth v. Tolbert**, 424 A.2d 1342, 1344 (Pa. 1981) (citation omitted), the magistrate's assessment of probable cause, as well as the ultimate question as to whether the warrant should issue, is distinctly forward-looking.

**Glass**, 754 A.2d at 662–63. Based on the facts laid out in the affidavit, the suppression court concluded that Agent Miller's "extensive and meticulous investigation" provided ample probable cause in the search warrant to justify Appellant's arrest. Suppression Ct. Op., 5/22/2012, at 8. The affidavit of probable cause presented sufficient facts for the magistrate to reasonably infer probable cause to search Appellant's person based on his well-documented involvement in numerous suspected illegal drug sales. Those

facts juxtaposed with a fair probability that police would discover contraband on his person after Appellant left the stash house gave the magistrate ample authority to assess and find probable cause to issue the warrant to search his person.

Next, Appellant argues that the information contained in the affidavit of probable cause was not sufficiently reliable. *See* Appellant's Br. at 29. Specifically, he asserts that the warrant failed to establish that confidential informants provided sufficiently reliable inside information beyond mere assertions that they had purchased drugs from Appellant in the past. *See id.* at 32. This argument is also without merit.

"[A] determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." *Commonwealth v. Clark*, 28 A.3d 1284, 1288 (Pa. 2011).

> When information essential to a finding of probable cause is garnered from the use of confidential informants, the issuing authority determines the reliability of the informant's information from the facts supplied by the police official. The determination of reliability does not hinge on disclosed records regarding the track record of the informant. Furthermore, the affidavit need not contain the names, dates, or other information concerning prior arrests or convictions.

*Commonwealth v. Dukeman*, 917 A.2d 338, 342 (Pa. Super. 2007) (quoting *Commonwealth v. Gindlesperger*, 706 A.2d 1216, 1225 (Pa. Super. 1997)). Notwithstanding, "it is clear that under the totality-of-the-circumstances approach, there is no talismanic recitation of a particular

- 11 -

phrase with respect to 'reliability' or 'basis of knowledge' that will either be required or will suffice to conclusively establish, or conclusively disaffirm, the existence of probable cause." *Clarke*, 28 A.3d at 129.

In this case, Agent Miller employed several confidential informants and police monitored every step of the drug transactions. *See* Suppression Ct. Op., 5/22/2012, at 6. Here, the suppression court opined:

> In this case, corroboration of the reliability of the CI's was established by close police scrutiny of their conduct. The informants were searched and wired with intercepting and recording devices. The vehicle used by the CI was searched and surveillance was employed to track both the CI and [Appellant]. The CI was provided with marked money and his interactions with the [CI known as "unwitting"] were electronically recorded and observed by police. After the purchase, police met with the CI and conducted a second search of his person and his vehicle. The purchased narcotics were field tested and proved positive for heroin. Simultaneously[,] [Appellant] was observed and noted to travel to unwittings' residence immediately prior to the purchase of the heroin.
>
> Given this procedure, it was unnecessary to establish the reliability of the CI by documenting past arrests based upon his information. The manner in which the controlled buys were conducted proved the informant's reliability and provided ample probable cause for the search of [Appellant] and his residence.

*Id.* at 10.

Here, the affidavit provided substantial corroborative evidence and independently verified the confidential informant's reliability as an undercover agent who provided substantial assistance to police officers throughout their investigation. Thus, the Commonwealth was not required to establish the past arrests with which the confidential informant assisted in this case. *See Clarke*, 28 A.3d at 1292 (noting that information provided

- 12 -

by a confidential informant that is corroborated by independent police information will suffice to establish "a fair probability that contraband or evidence of a crime would be found"). Accordingly, Appellant's argument is without merit.

Lastly, Appellant contends that the warrant contained information that was "stale." Appellant's Br. at 33. According to Appellant, a day had passed between Appellant's last contact with the drugs and the authorization of the search warrant. *Id.* at 33-34. The premise of this argument defies the common sense inquiry for determining probable cause expounded in *Gray*, *supra* and *Gates*, *supra*. Even if the information in the affidavit was a day old, the issuing authority had the power to issue the warrant based on a reasonable belief that such information indicated Appellant was systematically dealing heroin per his involvement in a criminal enterprise. As discussed above, the warrant was justified by ample probable cause under the totality of the circumstances presented. Accordingly, we discern no error of law or abuse of the suppression court's discretion.

In his second issue, Appellant purports to challenge the sufficiency of the evidence to support his conviction. Preliminarily, we observe that his 1925(b) statement stated the following: "whether the trial court erred in finding the evidence sufficient to sustain a verdict of guilty on the count of 35 P.S. 780-113(a)(30)." Appellant's 1925(b) Statement, 7/12/2016, at 2. We pause to address the adequacy of his statement preserving this issue.

As this Court observed in *Commonwealth v. Freeman*, 128 A.3d

1231, 1247 (Pa. Super. 2015):

> The Pennsylvania Supreme Court has explained that Rule 1925 is a crucial component of the appellate process, which "is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

*Commonwealth v. Freeman*, 128 A.3d 1231, 1247 (Pa. Super. 2015) (internal citations and quotation marks omitted).

In this case, Appellant's 1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient. *See* Appellant's 1925(b) Statement, 4/1/2016. We observe that a jury found Appellant guilty of nine counts of 35 P.S. 780-113(a)(30) arising from two consolidated cases. Appellant's failure to specify which instance, element or elements of his convictions "upon which the evidence was insufficient" renders Appellant's sufficiency of the evidence claim waived on appeal. *Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015) (quoting *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008)

(internal citations omitted)).

Further, it is of no moment that the trial court addressed Appellant's sufficiency claim in its Rule 1925(a) opinion.

> The Commonwealth's failure [to object to the defect in the Rule 1925(b) statement] and the presence of a trial court opinion are of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim. Thus, we find 1925(b) waiver where appropriate despite the lack of objection by an appellee and despite the presence of a trial court opinion.

*Tyack*, 128 A.3d at 261 (quoting *Williams*, 959 A.2d at 1257 (internal citations omitted)). Accordingly, Appellant's sufficiency claim is waived.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2017

- 15 -